0

---

### H. FARRIS v. JOSEPH L. BENNETT'S EXECUTORS.

The record of the judgment in a suit for specific performance recited that certain issues of fact were submitted to a jury, and certain other issues of fact to the finding and adjudication of the court : *Held*, in the absence of explanation apparent in the record, that such a submission is to be inferred to have been made by consent of parties, and that the verdict of the jury upon the issues submitted to them was conclusive upon the court of the facts found thereby.

In the trial of " causes in equity," such as suits for specific performance, &c., it is not incumbent on the District Court to call in the aid of a jury, unless requested so to do by one of the parties.

To entitle a party to a specific performance of an executory contract containing mutual covenants, he must show that he had not been in default, but had taken all proper steps towards performance on his part.

But, although there has not been a strict legal compliance by the plaintiff with the terms of the contract, yet if his non-compliance does not go to, the essence of the contract, relief will be granted.

Where the agreement has not been strictly complied with by the plaintiff, still, if there has not been gross negligence on his part, and it is equitable that the agreement should be performed, and compensation may be made for any injury occasioned by the non-compliance with the strict terms of the agreement, a specific performance will be decreed.

If time is not of the essence of the contract, and it is equitable that the contract should be enforced, a court of equity will not refuse to decree a specific performance because negligence is imputable to the party invoking its aid.

See this case for circumstances under which a specific performance was held to be properly decreed, notwithstanding delay and default imputable to the plaintiffs.

A party cannot complain that his instructions were not given to the jury, when, being asked by the court if he had any instructions to offer, he failed to present them.

The signature of the obligee is not essential to the validity of a title bond for land, although the bond purports to be executed in part consideration of certain acts to be performed by the obligee.

APPEAL from Polk. Tried below before the Hon. J. M. Maxey. Seaborn J. Bennett and N. H. Davis, as executors of Joseph L. Bennett, deceased, and Jas. E. Word, brought this suit to the Fall Term, 1854, of the District Court of Polk county, against Farris, the appellant, and William Cochran, defendants. The object of the suit was to obtain the specific performance by Farris of his contract to convey one half of his headright league and labor of land, evidenced by his title bond executed to the plaintiffs' testator on the 25th of September, 1844.

The petition set forth the title bond, by which Farris contracted to make to Bennett a title to one half of his headright league and labor, in consideration of one hundred and fifty dollars, and of the further consideration that Bennett would clear the land out of the land office and procure the patents free from all expense to Farris. The plaintiffs averred full performance by their intestate and themselves, alleged certain pretexts set up by Farris in justification of his refusal to perform, tendered the payment, if equitable, of certain trivial expenses claimed to have been defrayed by Farris, and prayed that he be decreed to convey to the plaintiffs, or to the heirs of their testator, one half of the league and labor, as stipulated in his title bond.

Farris excepted to the petition for insufficiency, set up the statute of limitations of four years, and pleaded non-performance by the plaintiffs' testator of his part of the contract, by which he, the defendant, was delayed in obtaining his patents until the year

1850, when, in order to save his land, he was compelled to employ agents and attorneys, at his own expense, to assist in the completion of his titles; that, by these means, and upon payment by himself of all government dues upon the land, he finally obtained his patents about the month of Octobor, 1850; that the plaintiffs' testator utterly failed to pay the one hundred and fifty dollars mentioned in the title bond, and also failed to clear the land out of the office, or to pay any expense therefor, but proceeded to sell out and divide the land between himself and his confederates. Wherefore defendant prayed judgment, &c.

At the Spring Term, 1857, the plaintiffs amended their petition, and alleged that, in 1837, the defendant, Farris, and the plaintiffs' testator, entered into a verbal contract, by which the latter agreed to locate the headright certificate of the former, and clear out the titles from the office " on the shares;" that, by a sub-contract between Bennett, the plaintiffs' testator, and one Hubert, the latter went into possession of the league and labor in the year 1840, and still remained in possession. That the parol contract of 1837 was substantially ratified and confirmed by Farris in making his title bond in 1844, after the location, survey, &c., had been made by said Bennett and his agents, which location, survey, &c., were adopted and ratified by said Farris.

At the October Term, 1857, the plaintiffs further amended their petition, showing cause why their intestate and themselves had not obtained the patents, which is substantially recited in the opinion.

The plaintiff, Word, and the defendant, Cochran, claimed part of the land in controversy, by purchase under Hubert and Johnson, who derived their interest under the plaintiffs' testator.

At the October Term, 1858, Farris amended his answer, setting up limitations and laches of the plaintiffs and their testator. The cause came to trial at the same term, when there was judgment for the plaintiffs, and a special decree settling the respective rights of the parties, in which it was recited that four special issues, set out at length, were submitted to the jury "for their finding and verdict, and other issues of fact are submitted to the finding and adjudication of the court."

By a bill of exceptions, it appears that at the trial of the cause,

and before any charges were given to the jury, the defendant, Farris, submitted certain charges to the court in writing; and that, after the court had given its charge in chief, it inquired of Farris' counsel whether he had any charges to ask, to which the counsel replied, that he had submitted to the court the charges he wished, which he believed were substantially embraced in those given by the court; "and, thereupon, the court considering said charges as waived, the same were not given to the jury or refused."

Farris moved for a new trial, which was refused.

*A. P. Wiley,* for the appellant. The first question is, was the written agreement of 1844, not being signed by Bennett, binding on Farris. Chancellor Kent says, that "it seems to be very generally and properly laid down in the books, that a court of equity will never decree a specific performance when the remedy is not mutual, or one party only is bound by the agreement." (Parkhurst v. Van Cortland, 1 Johns. Chan. R., 282; Benedict v. Lynch, Id., 374.) And Justice Lipscomb, in the case of De Cordova v. Smith, (9 Tex. R., 144,) quotes with approbation the foregoing passage from Kent, but does not rest the decision of that case upon the doctrine there laid down.

*N. Hart Davis,* for the appellees. To sustain the decree of the District Court, we respectfully refer to Emmons v. Oldham, 12 Tex. Rep., 28; Holman v. Criswell, 15 Tex. R., 394; Vardeman v. Lawson, 17 Tex. R., 11; Hemming v. Zimmerschitte, 4 Tex. R., 159.

*A. Middleton,* also for the appellees.

WHEELER, C. J. It appears, by the record of the judgment, that certain issues of fact, which are recited therein, were submitted to the jury, and the other issues of fact necessary to a decision of the case were "submitted to the finding and adjudication of the court." The effect of such a submission was to refer the decision of the case to the court upon the special verdict and the evidence. The verdict was conclusive upon the court of the facts.

found by it; and the other questions of fact material to the decision of the case were referred to the court for decision without the intervention of a jury. It does not appear expressly that the submission was so made by the consent of parties; but that is fairly to be inferred. There was no objection made to this mode of trial in the court below. It was doubtless chosen or assented to by the parties. It was not incumbent on the court, in a case of this nature, to call in the aid of a jury, unless it was requested by one of the parties. (Constitution, art. 4, § 16.)

The correctness of the judgment upon the merits will depend upon the sufficiency of the facts found by the jury, and established by the proofs, to warrant its rendition.

The right of the plaintiffs to have a specific performance of the contract, on which they sue, decreed them, is resisted upon two grounds—first, failure to perform; and, second, laches on the part of the plaintiffs. The former is the ground mainly relied on.

There is no question respecting the law applicable to the case. It is not questioned, on the one hand, that it is the general rule, that, to entitle a party to a specific performance, he must show that he has been in no default in not having performed the agreement, and that he has taken all proper steps towards the performance, on his part; yet, on the other hand, though there has not been a strict legal compliance with the terms of the contract, yet, if the non-compliance does not go to the essence of the contract, relief will be granted. Where the agreement has not been strictly complied with, still, if there has not been gross negligence in the party, and it is equitable that the agreement should be performed, and compensation may be made for an injury occasioned by the non-compliance with the terms of the agreement strictly, specific performance will be decreed. That negligence may be imputed will not deprive a party of the aid of a court of equity to enforce specific performance where time is not of the essence of the contract, and it is equitable that the contract should be enforced. There are many cases in which the court will grant relief to a party who has acted fairly though negligently.

What are the facts as respects performance of the contract on the part of the plaintiffs? It is in proof, that, in 1838, pursuant

to the previous parol contract, the plaintiffs' testator procured the land to be located and surveyed, the field notes to be recorded, and the government dues paid. Nothing then remained to be performed on his part but to return the field notes to the general land office, and obtain the patents. Thus the matter stood when the defendant executed his bond for title on the 25th day of September, 1844. This was a novation or renewal of the contract and undertaking of the defendant, and a ratification of what had been done under and in pursuance of the parol agreement. The principal and substantial part of the contract had been performed to the satisfaction of the defendant. The bond for title recites the consideration upon which it was given ; the most material part of which, to say the least, had already been performed. The patent, it is true, was not obtained until 1850; but the delay is explained by the defendant's own admissions, deliberately and solemnly made in his answer to the suit of Elkins and wife, in September, 1850. He there ascribes the delay mainly to the fact that the county lines had not been established, which made it impossible to tell in what county the land lay, and to the neglect of the district surveyors in making the necessary plots and maps. All the causes of delay, he says, were "incident to our land system, and the condition of the country." This evidence certainly went far to exculpate the plaintiffs' testator from the charge of negligence in not sooner obtaining the patent.

But the defendant avers, that in consequence of the delays of the plaintiffs' testator, he was compelled to employ agents and attorneys, and to incur the expense of paying the government dues and obtaining the patent, without any aid or assistance, or the offer of aid or assistance on the part of the plaintiffs' testator, or any one acting in his behalf. This is a grave charge; but it is unsupported by the evidence. It is true that the defendant employed an agent to look after his interests, and, it seems, to effect a division of the land between himself and Hubert, who had acquired an interest under the plaintiffs' testator. The only obstacle in the way of an amicable partition, according to the contract at that time, was the want of the patent. Hubert sent and obtained the field notes; and the agent undertook to forward them

to the land office and obtain the patent; but declined to receive the money proffered him to defray the expenses, because the amount which would be required was not known. He proposed to pay the expenses himself, and then, when the amount was ascertained, that it should be refunded by Hubert. Upon this understanding, the latter delivered to him the field notes. It cannot be pretended that the defendant could obtain any legal advantage by the payment of the expenses incident to the obtaining of the patent, with this understanding. He cannot set up the payment as a performance by himself of what ought to have been performed by the other party to the contract, or acquire any rights from it, except to have the money refunded; and this the plaintiff offered to do. It gave that right and no more. The agent induced the other party to repose confidence in him, and he received the field notes upon the trust that he would perform what he had undertaken, and look to Hubert to be reimbursed his expenses. It is scarcely necessary to say that the principal is bound by the acts of his agents equally as if they were his own acts. To permit him to make use of the confidence reposed in him to his own advantage and to the prejudice of the other party, would be to permit a trustee to benefit by a breach of the trust he had taken upon himself to discharge, and the betrayal of a confidence he had induced the other party to repose in him. It would be to permit him to benefit by the perpetration of a manifest fraud. The pretension for which the defendant seeks to make his payment of the expenses of procuring the issuance of the patent the occasion, under the circumstances, can receive no countenance from a court of equity. It is not consistent with the dictates of honesty, and is not the fair dealing which equity requires of those who seek its aid either to enforce or be relieved from their legal obligations. It is a mere pretext to avoid the obligations of a contract which the party was bound in equity and good conscience to perform.

It is averred that the defendant employed attorneys, also, and it appears that he did so shortly before he obtained the patent; and that those attorneys procured the issuance of the patent at his expense. They paid the government dues, and paid the person

whom Hubert had employed to go and obtain from the surveyor's office the field notes, notwithstanding they were apprised by him that he looked to Hubert, and did not desire them to pay him for his services. Nevertheless, they induced him to receive compensation from them. What necessity there was for the payment of the government dues a second time; whether the evidence of the former payment had not been preserved, or whether they took any means to ascertain whether the dues had been paid, does not appear. It is in proof, however, that they had been paid, and it does not satisfactorily appear that the defendant's attorneys did not pay them in their own wrong, as they certainly did the expense of sending for the field notes. It certainly does not satisfactorily appear that any of the expenses which the defendant incurred in obtaining his patent, were necessarily devolved upon him by the fault of the other party to the contract. These expenditures are susceptible of ready compensation in money, and this the plaintiffs tendered, and appear to have been ready and willing to make to the defendant's satisfaction. The defendant paid other amounts to his attorneys; but this appears to have been for their services in removing intruders from the land, which is not made a ground of complaint by the defendant's pleadings.

The suggestion that the defendant was not informed respecting the locality of the land, or what had been done with his certificate, or towards obtaining the patent, does not appear to be well founded in fact. This bond for title recites the locality of the land, showing that this was known to him in 1844, and his answer in the Elkins suit showed that he was apprised of the causes which had delayed the obtaining of the patent. Upon the whole it is fair to conclude, that up to the time the defendant was intrusted with the field notes, upon his undertaking to send for and obtain the patent, he intended in good faith to perform his contract. He had even gone so far as to join with the other party in selecting persons to divide the land between them according to the contract, which was only prevented by the absence of the patent. The objections subsequently urged that the plaintiffs' testator had failed to perform his part of the contract, appears to have been an after-thought, and the payment of expenses, in part, at least, to have been done

to afford a pretext for refusing to perform the contract on his part. So the jury thought, and the evidence, we think, warranted them in so finding. And upon the whole, we are of opinion that the merits of the case are with the plaintiffs, and that they were well entitled to the decree for specific performance.

It is unnecessary to notice the assignments of error which have not been relied on in argument further than to say they do not appear to be well taken. Nor is it necessary to notice objections urged in argument to the plaintiffs' right to the relief they seek, which were not taken by the defendant in his answer, or otherwise at the trial. The alleged sales of portions of the land by those claiming under the plaintiffs' testator could not affect the rights of the defendant, in a partition. Such sales by his co-tenant were void as to him. If the decree has not fully secured to him his rights as respects the vendees in those sales, it does not appear, nor does the assignment of errors bring in question the correctness of the decree in this respect. The defendant complains of the refusal of his instructions. But it is evident from the bill of exceptions that the court understood them to be waived by the counsel, and we think the court was warranted in such understanding. If, when enquired of, the counsel desired the instructions given, he should have said so distinctly. Upon the first branch of the instruction, respecting the import of the contract, the court had fully instructed the jury, by stating to them what obligation the contract imposed on the plaintiffs, and what was necessary to entitle them to a specific performance. In respect to the second branch of the instruction, which related to the payment of the consideration money expressed in the bond, it is to be observed that there was no evidence which conduced to show that it had not been paid. The statements of the defendant in his answer to interrogatories, had reference to the parol contract of 1837, and not to the written obligation of 1844. He was interrogated respecting the former specially, and his answers had reference to that. But it will suffice to say we do not think the defendant in a situation to complain that the charge was not given, because he did not ask that it should be given at the proper time, in answer to the inquiry of the court.

The statute of limitations pleaded had no application to the case; and we do not think the plaintiffs are shown to have been guilty of such laches or negligence as to deprive them of the right to the relief they seek. On this point the defendant has no cause to complain of the charge of the court.

There is nothing in the objection taken to the validity of the contract, that it was not signed by the plaintiffs' testator. It is not usual, nor has it ever been thought necessary to the validity of a bond for title, that it should be executed by the obligee.

We are of opinion that there is no error in the judgment, and it is affirmed.

Judgment affirmed.