# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-07-00689-CV

Crandall Medical Consulting Services, Inc., Appellant

v.

John A. Harrell, Appellee

### FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT
### NO. C2007-0109C, HONORABLE JACK A. ROBISON, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Appellant Crandall Medical Consulting Services, Inc., ("CMC")[1] appeals the trial court's grant of summary judgment in favor of appellee John A. Harrell and the denial of summary judgment in its favor. The trial court ordered specific performance of the contract for the sale of real property between the parties and awarded damages and attorney's fees. In two issues, CMC contends that the trial court erred in granting summary judgment in favor of Harrell because he failed to deposit additional earnest money of $100 as required by the contract and that CMC was entitled to summary judgment because it timely terminated the contract. Because we conclude the trial court did not err in granting summary judgment in favor of Harrell, we affirm the trial court's judgment.

[1] Appellant is identified as Crandall Medical Consulting Services, Inc., in Harrell's pleadings and the final summary judgment, but appellant refers to itself as "Crandall Medical Consulting, Inc." or "CMC" in its briefing to this Court. Appellant has not alleged a pleading defect. *See* Tex. R. Civ. P. 91 (special exceptions to challenge pleading defects), 93 (verified pleading to challenge defect of parties).

## FACTUAL AND PROCEDURAL BACKGROUND

CMC and Harrell executed the contract for the sale of real property (the "Contract") on or around November 17, 2006. CMC agreed to sell and Harrell agreed to buy real property located in the city of New Braunfels in Comal County for $253,000 on or before January 26, 2007. The Contract provided that "[t]ime is of the essence in this contract." It also provided for attorney's fees to the prevailing party in any legal proceeding related to the transaction and the remedy of specific performance in the event that either party was in default.

The Contract required Harrell to deposit earnest money with a title company. Harrell agreed to deposit earnest money of $2000 within three days of the Contract's effective date and to deposit "additional earnest money" of $100 on or before the 14th day after the feasibility period expired. During the thirty-day feasibility period, Harrell had the right to terminate the Contract for any reason and recover his earnest money deposit less $100. Harrell deposited $2000 with the title company in accordance with the Contract, but he did not deposit the additional earnest money of $100 prior to closing his part of the Contract on January 26, 2007.

In December 2006, CMC requested that the closing date be extended. Harrell responded that he would agree to the extension provided that CMC agreed to pay rent for every month that CMC occupied the property after the closing. The parties ultimately were unable to agree to an extension, and Harrell notified the title company by letter dated December 29, 2006, to "proceed with the necessary paperwork so we may close on or before January 26, 2007 as noted in the original terms of the Contract."

2

On or about January 3, 2007, Dr. Dora Crandall[2] on behalf of CMC sent a "Notice of Termination of Contract" to the title company. Harrell does not dispute that he received a copy of the notice from the title company.[3] The notice states that "Seller notifies Buyer that the Contract is terminated" and directs the title company to release the earnest money to Harrell.

On or around January 9, 2007, Harrell's attorney notified CMC and the title company that, in his opinion, CMC did not have a legal right to terminate the Contract, that Harrell had the legal right to enforce specific performance, and that Harrell would proceed with the closing. On January 26, 2007, Harrell closed his side of the Contract and tendered the purchase price of $253,000 by cashier's check to the title company in the amount of $64,029.01 and a real estate lien note on the balance. Thereafter, Harrell brought this suit to enforce specific performance of the Contract and for damages.

The parties filed competing motions for summary judgment and responses to the other party's motion. In his motion for summary judgment, Harrell contended that there were no genuine issues of material fact that the Contract was valid as a matter of law and subject to enforcement by specific performance. It was undisputed that the Contract was valid and enforceable when executed, that Harrell timely deposited earnest money of $2000, that Harrell timely tendered the purchase

---

[2] Dora Crandall, M.D., is the president of CMC. She negotiated and executed the Contract on behalf of CMC and sent the notice of termination with a letter and a release of earnest money to the title company.

[3] In his second amended petition, Harrell states: "On or about January 4, 2007, the Plaintiff received notice from [the title company] that Defendant had attempted to terminate the contract and had instructed [the title company] to disburse the earnest money to the Plaintiff." In his original petition, Harrell attached a copy of Crandall's letter to the title company, the "Notice of Termination of Contract," and a "Release of Earnest Money" as exhibits.

price, and that CMC refused to convey the real property. Harrell's summary judgment evidence included the Contract and affidavits from Harrell, Lacie Orsak, Yerger Hill, III, and Kenneth D. Brazle. Harrell averred that he had closed his portion of the Contract and that, because the real property was unique, he did not have an adequate remedy at law if CMC was not required to convey the real property. Orsak, a commercial lender, averred to her appraisal of the real property, opining that the value of the real property on January 23, 2007, was $254,072. Hill and Brazle, Harrell's attorneys, averred and opined to Harrell's incurred attorney's fees.

CMC responded to Harrell's summary judgment motion and filed its own motion for summary judgment in the same pleading. In response to Harrell's motion, CMC contended that there were genuine issues of material fact as to its counterclaim for breach of fiduciary duty and its affirmative defenses of duress and estoppel. In its motion for summary judgment, CMC contended that it was entitled to judgment as a matter of law because the "uncontradicted summary judgment evidence establishes that the contract on which [Harrell] relies expired on his receipt of written notice of cancellation from Seller [CMC] on or about January 3, 2007." CMC also filed a supplemental motion for summary judgment seeking its attorney's fees and a supplemental response to Harrell's motion for summary judgment raising the additional affirmative defense that the Contract was unconscionable.

CMC's summary judgment evidence included the affidavits of CMC's counsel, Crandall, Michelle Sanders, and Barbara Parrish. Crandall averred to her relationship and communications with Harrell concerning the Contract and that she "gave formal notice of termination of the agreement" on January 3, 2007. CMC also attached deposition excerpts from

4

Harrell in which he testified that the title company forwarded the notice of termination to him and that he did not deposit the "additional $100" of earnest money prior to closing the transaction. Sanders and Parrish averred to interactions that they witnessed between Crandall and Harrell and Harrell's representative. CMC's counsel averred to attorney's fees. CMC attached to its supplemental response the affidavits of John Welch who performed an appraisal of the property and Douglas Cottle who averred to a conversation that he overheard at Crandall's office.

Harrell thereafter filed a reply to CMC's responses and special exceptions and objections to and motion to strike CMC's summary judgment evidence and its responses to Harrell's motion for summary judgment. As to Crandall's affidavit, Harrell sought to exclude it on several grounds, including that it was conclusory, argumentative, and "so in conflict with her sworn deposition testimony" that it was unreliable. Harrell also sought to exclude CMC's evidence that addressed defenses that CMC had not pleaded. CMC's live pleading, its first amended original answer and counterclaim, did not include breach of fiduciary duty as a counterclaim or duress, estoppel, or unconscionability as affirmative defenses. CMC asserted breach of fiduciary duty as an affirmative defense, and, also as an affirmative defense, that the Contract was unenforceable "because it terminated under its own terms when Defendant gave contractual Notice of Termination on January 3, 2007."[4]

The trial court held a hearing on Harrell's motion for summary judgment. At that time, CMC did not set its motion for summary judgment, and CMC does not dispute that its

---

[4] CMC does not challenge the trial court's summary judgment rulings based on its affirmative defense of breach of fiduciary duty.

5

pleadings did not include breach of fiduciary duty as a counterclaim or the affirmative defenses of duress, estoppel, or unconscionability. A week later, CMC filed a motion for leave to amend its pleadings to include its defenses raised in its responses to Harrell's motion for summary judgement. The district court denied CMC's motion for leave to amend its pleadings. Thereafter, the trial court entered its final summary judgment, ordering specific performance of the Contract and awarding damages and attorney's fees to Harrell. The trial court also sustained Harrell's special exceptions and objections to and motion to strike CMC's summary judgment evidence and its responses to Harrell's motion for summary judgment, and denied CMC's motion for summary judgment. This appeal followed.

**ANALYSIS**

In two issues, CMC contends that the trial court erred in granting Harrell's summary judgment and in denying CMC's summary judgment. In its first issue, CMC contends that the trial court erred in granting Harrell's summary judgment because Harrell's "summary judgment proof failed to prove that he had tendered the additional earnest money required by the Contract as a matter of law." In its second issue, CMC contends that the trial court erred in denying its motion for summary judgment because Harrell's "uncontroverted summary judgment proof proved that [Harrell] failed to deposit the additional earnest money and that [CMC] had timely terminated the Contract."

***Standard of Review***

We review the trial court's decision to grant summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a summary judgment

6

motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) (movant must conclusively prove all "essential elements of his cause of action or defense as a matter of law"). In deciding whether there is a disputed material fact issue precluding summary judgment, we must take evidence favorable to the nonmovant as true, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in the nonmovant's favor. *Dorsett*, 164 S.W.3d at 661; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). Where the trial court does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

If the movant shows that it is entitled to judgment as a matter of law, the burden shifts to the nonmovant to present evidence to raise a material fact issue that precludes summary judgment. *See City of Houston*, 589 S.W.2d at 678-79. As to a non-movant's affirmative defenses, once a movant establishes its right to summary judgment as a matter of law on its claims, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact on each element of its affirmative defenses; a mere pleading of an affirmative defense will not avert summary judgment. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Parker v. Dodge*, 98 S.W.3d 297, 300 (Tex. App.—Houston [1st Dist.] 2003, no pet.). When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other one, the reviewing court

considers the summary judgment evidence presented by both sides, determines all questions presented, and, if the reviewing court determines that the trial court erred, renders the judgment that the trial court should have rendered. *Dorsett*, 164 S.W.3d at 661.

CMC's issues address matters of contract construction. "[A] court interprets a contract by ascertaining the true objective intentions of the parties, based on the contract language." *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). A court construes written instruments as a whole in an effort to harmonize and give effect to all the provisions of the instrument so that none will be rendered meaningless. *Dorsett*, 164 S.W.3d at 662; *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 292 (Tex. 2004). No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Khan*, 138 S.W.3d at 292. Contract terms are given their "plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Dorsett*, 164 S.W.3d at 662. When a court concludes that contract language can be given a certain or definite meaning, then the language is not ambiguous, and the court will construe the contract as a matter of law. *Coker*, 650 S.W.2d at 393.

### *Additional Earnest Money of $100*

In its first issue, CMC contends that trial court erred in granting summary judgment because Harrell's "summary judgment proof failed to prove that he had tendered the additional earnest money required by the Contract as a matter of law." CMC contends that the remedy of specific enforcement required Harrell to "show that he has diligently and timely performed or tendered performance of all obligations under the contract" and that he did not do so because it was

8

undisputed that he did not deposit the $100 of additional earnest money. CMC argues that Harrell's failure to deposit the additional earnest money of $100 was a default under the Contract, and "[h]aving so defaulted, Harrell did not satisfy one of the conditions prerequisite to the invocation of his contractual right to specific performance."

The law of contracts and the equitable principles of specific performance control a contract to sell real estate that requires an earnest money payment. *See Hudson v. Wakefield*, 645 S.W.2d 427, 430 (Tex. 1983) (citing *Cowman v. Allen Monuments, Inc.*, 500 S.W.2d 223, 226 (Tex. App.—Texarkana 1973, no writ)). "Specific performance of a contract for the sale of realty is ordinarily granted where the suit is based on a valid contract, but it is not a remedy which exists as a matter of right." *Kress v. Soules*, 261 S.W.2d 703, 704 (Tex. 1953); *see Wilson v. Klein*, 715 S.W.2d 814, 819 (Tex. App.—Austin 1986, writ ref'd n.r.e.) (specific performance is equitable remedy).

A party may avoid enforcement of its contractual obligations based on the other party's material breach. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 198 (Tex. 2004) (party released from further contractual obligations when the other party materially breached); *Hudson*, 645 S.W.2d at 430 (plaintiff not entitled to specific performance if it has committed a material breach); *Advance Components, Inc. v. Goodstein*, 608 S.W.2d 737, 739 (Tex. App.—Dallas 1980, writ ref'd n.r.e.) (when "'non-compliance does not go to the essence of the contract,'" remedy of specific performance available; quoting *Farris v. Bennett's Executors*, 26 Tex. 568, 572 (1863)). This theory of avoidance is an affirmative defense. *See* Tex. R. Civ. P. 94

9

(matters constituting avoidance are affirmative defenses); *Mustang*, 134 S.W.3d at 197 ("In their respective answers, both parties raised the other's material breach as an affirmative defense.").

Important to the resolution of this issue is what CMC does not dispute, challenge, or contend and CMC's pleadings. CMC does not dispute that the Contract was valid and enforceable when executed, that it is unambiguous, that Harrell timely deposited earnest money of $2000, and that Harrell tendered the full purchase price prior to the contractual closing date. CMC does not challenge the trial court's denial of its motion for leave to amend its pleadings to assert the defenses that it raised in its responses to Harrell's motion for summary judgment. CMC does not challenge the trial court's ruling sustaining Harrell's special exceptions and objections to and motion to strike CMC's summary judgment evidence and its responses to Harrell's motion for summary judgment except as to Crandall's affidavit.[5] CMC did not plead as an affirmative defense and does not contend otherwise that Harrell's failure to deposit additional earnest money of $100 was a material breach of the Contract or that CMC was prejudiced or damaged in any way by Harrell's failure to deposit additional earnest money.[6] On this record, we conclude that Harrell was not required to present

[5] As part of its second issue, CMC contends that the trial court erred in excluding Crandall's affidavit, particularly her statement that she terminated the Contract. Because Harrell does not dispute that he received the notice of termination from the title company and we conclude that the Contract did not allow CMC to terminate based on Harrell's failure to deposit additional earnest money of $100 prior to the closing, we need not address CMC's argument that the trial court erred in excluding Crandall's affidavit. *See* Tex. R. App. P. 44.1(a); 47.1.

[6] Whether the other party's breach is material to excuse a party's performance of a contract ordinarily is a fact question. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 198-99 (Tex. 2004). In *Mustang*, the jury returned a verdict that both parties breached the agreement, but the jury was not asked to determine whether the respective breaches were material. *Id*. at 197. The supreme court concluded that the defendant's breach was material as a matter of law to excuse the plaintiff's performance. *Id*. at 199. The supreme court listed factors to consider in determining materiality:

10

summary judgment evidence that he had deposited additional earnest money of $100 prior to closing his portion of the Contract to prove the "essential elements of his cause of action" and that he met his burden to prove that he was entitled to summary judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *City of Houston*, 589 S.W.2d at 678. The issue then is whether CMC presented evidence to raise a material fact issue to preclude summary judgment. *See City of Houston*, 589 S.W.2d at 678-79.[7]

CMC relies on its interpretation of the Contract's earnest money provisions and the provision that time was of the essence to support that Harrell's failure to deposit additional earnest money precluded summary judgment in Harrell's favor and the remedy of specific performance of the Contract. We turn then to a review of the Contract and these provisions. Pursuant to the earnest

---

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurances; [and] (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Id*. (citing Restatement (Second) of Contracts § 241 (1981)). CMC did not plead material breach by Harrell to excuse its performance, but, even if it had, it failed to present summary judgment evidence that would support a finding in its favor on any of the supreme court's enumerated factors. *See id.*

[7] The dissent concludes that we uphold the summary judgment on a basis not presented by Harrell to the trial court because Harrell did not seek summary judgment on the basis that he breached the Contract but that his breach was not material. But the burden was on CMC to plead material breach by Harrell as an affirmative defense and to present summary judgment evidence that Harrell materially breached the Contract to preclude summary judgment. *See id.*; *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp*., 988 S.W.2d 746, 749 (Tex. 1999) (once movant establishes right to summary judgment, burden on nonmovant to present evidence raising fact issue on affirmative defense).

11

money provisions, Harrell was required to deposit earnest money of $2000 with the title company within three days of the Contract's effective date and additional earnest money of $100:

> Not later than 3 days after the effective date, Buyer must deposit $2,000.00 as earnest money with [the title company] at [the title company's address]. Buyer will deposit additional earnest money of $100.00 on or before [ ] the 14th day after Buyer's right to terminate under [the feasibility period provision] expires.

The Contract also provides that "[t]ime is of the essence in this contract. The parties require strict compliance with the times for performance." We conclude that these provisions are not ambiguous, and we interpret them as a matter of law. *See Coker*, 650 S.W.2d at 393.

CMC relies on *Liedeker v. Grossman*, 206 S.W.2d 232 (Tex. 1947), and *Wilson v. Klein*, 715 S.W.2d 814, to contend that Harrell was strictly bound to comply with the Contract and that, when he failed to do so by not depositing the additional earnest money, he was not entitled to specific performance. In *Liedeker*, the parties agreed that time was of the essence and that the contract to convey land was to be closed within 20 days. 206 S.W.2d at 232. The supreme court denied specific performance, observing that it was undisputed that the terms of the contract were to be carried out within twenty days and that did not happen. *Id.* at 234. In *Wilson*, this Court denied specific performance to enforce a real estate contract that contained a stipulation that time was of the essence when it was undisputed that the buyer never made an "actual tender—an unconditional offer to pay the correct amount." 715 S.W.2d at 822-23. Unlike the parties in *Liedeker* and *Wilson*, it is undisputed that Harrell actually tendered the full purchase price within the "essential time limit" prescribed by the contract—"on or before January 26, 2007." *See City of Houston*,

12

589 S.W.2d at 678; *Liedeker*, 206 S.W.2d at 234 ("essential time limit" that "parties comply with their obligations under the contract" by closing date).

CMC's interpretation of the Contract would allow it to avoid its contractual obligation to convey the real property at the same time that CMC acknowledges that Harrell tendered the full purchase price prior to the closing date and that CMC was not harmed or prejudiced by the amount of earnest money on deposit at any time. *See Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976) (quoting *Henshaw v. Texas Natural Res. Found.*, 216 S.W.2d 566 (Tex. 1949)) ("forfeitures are not favored" and "'[i]f the terms of a contract are fairly susceptible of an interpretation which will prevent a forfeiture, they will be so construed.'"). In light of our interpretation of the Contract, CMC failed to raise a material fact issue based on Harrell's failure to deposit additional earnest money of $100 to preclude summary judgment and the remedy of specific enforcement. We conclude that the trial court did not err in granting Harrell's motion for summary judgment. We overrule CMC's first issue.

### CMC's Termination of the Contract

In its second issue, CMC contends that the trial court erred in denying its motion for summary judgment because the "uncontroverted" summary judgment evidence proved that CMC timely terminated the Contract when Harrell failed to deposit the additional earnest money. CMC contends that it terminated the Contract after Harrell failed to deposit the additional earnest money with the title company by January 2, 2007—within 14 days after the feasibility period expired. Harrell does not dispute that he received a copy of the notice of termination from the title company. In its first amended answer, CMC alleged as an affirmative defense that "the contract that was made

13

the basis of Plaintiff's petition is unenforceable because it terminated under its own terms when Defendant gave contractual Notice of Termination on January 3, 2007." *See* Tex. R. Civ. P. 94. To be entitled to summary judgment on its affirmative defense, the burden was on CMC to prove its defense as a matter of law. *See* Tex. R. Civ. P. 166a(c). As it is dispositive, we begin by reviewing the Contract to determine if it allowed CMC to terminate based on Harrell's failure to deposit additional earnest money of $100.

CMC relies on the earnest money and the default provisions of the Contract to support its contractual right to terminate the Contract when Harrell did not timely deposit additional earnest money of $100. The earnest money provisions allowed CMC to terminate the Contract by providing written notice if Harrell failed to deposit "the earnest money" and, in that event, to exercise its remedies under the Contract's default provisions:

> If Buyer fails to timely deposit the earnest money, Seller may terminate this contract by providing written notice to Buyer before Buyer deposits the earnest money and may exercise Seller's remedies under [the default provisions].

We conclude that these provisions are not ambiguous, and we interpret them as a matter of law. *See Coker*, 650 S.W.2d at 393.

CMC contends that the reference to "the earnest money" in the sentence allowing CMC to terminate included both the initial deposit of $2000 and the additional deposit of $100, validating CMC's termination of the Contract when Harrell failed to deposit the additional $100. The plain language, however, in this sentence refers to "the earnest money" singularly and allows CMC to terminate only *before* Harrell deposited "the earnest money," supporting an interpretation

14

that the parties' intent was to allow CMC to terminate only if Harrell failed to deposit the initial amount of $2000. *See Dorsett*, 164 S.W.3d at 662 (contract terms given plain meaning). Interpreting "the earnest money" to refer to the initial deposit also is consistent with the purpose of earnest money—"to show a good-faith intention to complete the transaction." *See Black's Law Dictionary* 525-26 (7th Ed. 1999). By depositing the earnest money, Harrell showed his intention to complete the transaction.

Had Harrell failed to deposit earnest money, CMC would not have been contractually obligated to take any actions or expend any funds. CMC could have proceeded with the Contract without an earnest money deposit, or it could have sought available remedies under the default provisions, including specific performance or liquidated damages. In contrast, after Harrell deposited earnest money of $2000, the parties contractually were required to take actions in preparation for the closing, further supporting that the parties did not intend to give CMC another opportunity to terminate the Contract after the feasibility period had expired based on the additional earnest money deposit of $100.[8] We conclude that the sentence in the earnest money provisions providing CMC the right to terminate for Harrell's failure to deposit "the earnest money" did not allow CMC to terminate the Contract based on Harrell's failure to deposit the "additional earnest money" of $100 prior to his tender of the purchase price.

CMC also contends that the default provisions allowed CMC to terminate the Contract by Harrell's failure to deposit the additional earnest money of $100. CMC contends that

---

[8] The feasibility period provision allowed Harrell to terminate the Contract for any reason "within 30 days after the effective date" by providing written notice to CMC.

"Harrell's failure to deposit the additional earnest money constituted a default under the Contract" and that an available remedy to CMC for "a default" was termination. The default provisions provide the following remedies for the other party's failure to comply with the Contract:

A. If Buyer fails to comply with this contract, Buyer is in default and Seller may:

(1) terminate this contract and receive the earnest money as liquidated damages, thereby releasing the parties from this contract; or

(2) enforce specific performance, or seek other relief as may be provided by law, or both.

B. If, without fault, Seller is unable within the time allowed to deliver the estoppel certificates or the commitment, Buyer may:

(1) terminate this contract and receive the earnest money, less any independent consideration under [the feasibility period provision], as the sole remedy; or

(2) extend the time for performance up to 15 days and the closing will be extended as necessary.

C. Except as provided in Paragraph [ ]B, if Seller fails to comply with this contract, Seller is in default and Buyer may:

(1) terminate this contract and receive the earnest money, less any independent consideration under [the feasibility period provision], as liquidated damages, thereby releasing the parties from this contract; or

(2) enforce specific performance, or seek such other relief as may be provided by law, or both.

We conclude that these provisions are not ambiguous, and we interpret them as a matter of law.

*See id.*

16

CMC's interpretation of the Contract would modify the law of contracts and specific performance to allow CMC to terminate the Contract no matter how immaterial the breach. *See Hudson*, 645 S.W.2d at 430; *see also Hohenberg Bros. Co.*, 537 S.W.2d at 3.[9] CMC's interpretation also is inconsistent with the contract as a whole. *See Khan*, 138 S.W.3d at 292 (no single provision taken alone will be given controlling effect). By the parties' express reference in the earnest money provisions to CMC's right to seek remedies under the default provisions if Harrell failed to deposit "the earnest money," the parties' intent was not to include this same remedy—remedies under the default provisions—as to the "additional earnest money" of $100. *See id*. (courts are to harmonize the provisions of a contract to give effect to all provisions). We conclude that the default provisions did not allow CMC to terminate the Contract based on Harrell's failure to deposit the additional earnest money of $100 prior to his timely tender of the purchase price.

CMC relies on *Limestone Group, Inc. v. Sai Thong, L.L.C.*, 107 S.W.3d 793, 796-97 (Tex. App.—Amarillo 2003, no pet.), to support its interpretation of the Contract that the parties modified the general right to seek specific performance of a real estate contract as long as the party is not in material breach. In *Limestone*, our sister court affirmed the trial court's denial of a request

---

[9] The dissent contends that the "enforceability of the termination provision—i.e. whether [CMC] had the right to terminate the contract" was not adjudicated as a question of law or fact. But CMC raised the issue before the trial court in its motion for summary judgment, which motion the trial court denied. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (reviewing court considers issues raised in competing motions). The trial court does not state its grounds for denying CMC's motion for summary judgment, but it could have interpreted the Contract to conclude that it was unambiguous and enforceable and that it had not expired based on CMC's notice of termination. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (interpretation of unambiguous contract is as a matter of law).

for specific performance to enforce a real estate contract after the buyer, who was seeking specific performance, had deposited earnest money of $25,000 out of the contractually required amount of $75,000. *Id*. at 795, 797. The default provision of the contract provided the purchaser the right to enforce the contract by specific performance but only if "Purchaser shall not be in default hereunder." *Id*. at 796. In contrast, unlike the default provision in *Limestone*, Harrell's contractual right to enforce the contract by specific performance did not contain similar language—it was not conditioned on Harrell "not be[ing] in default hereunder." *See id.* Additionally, at the time that Harrell sought specific performance, he had tendered the full purchase price, which amount included earnest money deposits.[10]

In light of our interpretation of the Contract and the undisputed facts, we conclude that CMC did not have the contractual right to terminate the Contract based on Harrell's failure to deposit additional earnest money of $100. We, therefore, conclude that the trial court did not err in denying CMC's motion for summary judgment. We overrule CMC's second issue.[11]

---

[10] The Contract provides that earnest money "will be applied first to any cash down payment, then to Buyer's closing costs, and any excess will be refunded to Buyer."

[11] The dissent contends that it was undisputed that CMC terminated the Contract. Harrell, however, contends that, although CMC attempted to terminate the Contract, CMC failed to do so because it did not provide written notice of termination in compliance with the Contract. In his second amended petition, Harrell states: "Defendant never sent notice to Plaintiff as required by . . . the contract, of any attempt to terminate the contract." Because we conclude that the Contract did not allow CMC to terminate based on Harrell's failure to deposit the additional earnest money of $100, we need not address whether CMC provided written notice of termination in compliance with the Contract. Tex. R. App. P. 47.1.

18

## CONCLUSION

Because we conclude that the trial court did not err in granting summary judgment in favor of Harrell and in denying summary judgment in favor of CMC, we affirm the trial court's judgment.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Waldrop and Henson
   Dissenting Opinion by Justice Waldrop

Affirmed

Filed:   February 5, 2009